UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARIFFE VAUGHN,<br><br>                          Plaintiff,<br><br>v.<br><br>DEREK A. HAMPTON, correctional sergeant, F. CANLAS, correctional officer, J. CUEVAS, correctional officer, B. GOMEZ, correctional officer, J. ORSATT, correctional officer, and T. SOTO, correctional officer,<br><br>                          Defendants. | Case No.: 19-cv-01687-H-KSC<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS CUEVAS, GOMEZ, HAMPTON, ORSATT, AND SOTO'S MOTION FOR SUMMARY JUDGMENT; AND**<br><br>**(2) GRANTING DEFENDANT CANLAS'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 42.] |

On December 23, 2020, Defendants B. Gomez, T. Soto, F. Canlas, J. Cuevas, D. Hampton, and J. Orsatt (collectively, "Defendants") filed a motion for summary judgment. (Doc. No. 42.) On January 25, 2021, Plaintiff Shariffe Vaughn ("Plaintiff") filed an opposition in response to Defendants' motion for summary judgment. (Doc. No. 47.) On February 11, 2021, Defendants filed a reply. (Doc. No. 51.) The Court held a hearing on

the matter on February 22, 2021. (Doc. No. 52.) Ken Karan appeared on behalf of Plaintiff and Terrence Sheehy appeared on behalf of Defendants. (Id.) With the Court's permission, Defendants filed a corrected reply on February 23, 2021. (Doc. No. 53.) For the following reasons, the Court grants in part and denies in part Defendants' motion for summary judgment.

## Background

Plaintiff was a prisoner housed at the R.J. Donovan State Prison ("RJD") in 2018. (Doc. No. 50, Vaughn Decl. ¶ 2.) Defendants are correctional officers who worked at RJD during the relevant periods of this lawsuit. (Doc. No. 42-2, Canlas Decl. ¶ 1; Doc. No. 42-3, Cuevas Decl. ¶ 1; Doc. No. 42-4, Gomez Decl. ¶ 1; Doc. No. 42-5, Hampton Decl. ¶ 1; Doc. No. 42-6, Orsatt Decl. ¶ 1; Doc. No. 42-7, Soto Decl. ¶ 1.) Plaintiff's claims against Defendants arise from two alleged incidents that occurred on December 14 and 17, 2018. (Vaughn Decl. ¶¶ 3, 15.)

**The Food Port Incident**

On December 14, 2018, Defendants Gomez and Soto oversaw the feeding of Plaintiff's housing unit. (Vaughn Decl. ¶ 3.) According to Plaintiff, when they delivered his morning meal, he asked them to provide him with copies of legal papers related to his lawsuit against their colleague, Correctional Officer A. Parker.[1] (Id. ¶ 3.) Although Gomez and Soto were not in charge of making legal copies for inmates, (Gomez Decl. ¶ 3; Soto Decl. ¶ 3), in Plaintiff's experience, officers in their position regularly provide inmates with legal documents, (Vaughn Decl. ¶ 5). Plaintiff claims that both Gomez and Soto refused his request and left to finish feeding the remaining inmates. (Id.)

According to Plaintiff, when Gomez and Soto returned to Plaintiff's cell to pick up his food tray, Plaintiff requested to speak to their sergeant. (Id. ¶ 4.) The officers again

---

[1] On September 7, 2018, Plaintiff filed a complaint against Correctional Officer A. Parker, one of Defendants' coworkers, in which Plaintiff alleged, among other things, that Parker used excessive force against him while he lived in RJD. Complaint, Vaughn v. Parker, No. 18-cv-2098-JAH-MDD (S.D. Cal. Sept. 7, 2018), Doc. No. 1. The case is currently pending in this district. Neither side made a request for this case to be transferred under the Court's Low Number Rule, Local Rule 40.1(e).

refused. (Id.) In protest, Plaintiff put his hands and portions of his jumpsuit through his cell's food port door, inhibiting the officers' ability to close the port. (Id.) Plaintiff cites to the California Department of Corrections and Rehabilitation Operations Manual to explain that Gomez and Soto should have called their sergeant in this situation. (Doc. No. 47-2, Ex. 12.) But the policy permits controlled force while custody staff continue to monitor the inmate. (Id.; see also Gomez Decl. ¶ 5; Soto Decl. ¶ 5.) Plaintiff claims that Gomez and Soto forcefully grabbed his hands and jumpsuit, pulling them through the port. (Vaughn Decl. ¶ 6.) Plaintiff then claims that they slammed the port door on his left hand, causing him "extreme pain." (Id. ¶ 7.) At least one other inmate witnessed the incident and reports seeing Plaintiff's hand get smashed in the food port by the officers. (Doc. No. 47-2, Ex. 2, McKinley Decl.) After the event, Plaintiff reported Gomez and Soto's use of force. (Vaughn Decl. ¶ 11.)

Gomez and Soto have a different version of these events. According to them, Plaintiff only demanded legal documents upon their return to his cell to pick up his food tray, after he captured the food port. (Gomez Decl. ¶¶ 2-3; Soto Decl. ¶¶ 2-3.) At that time, the officers asked him to release the port so that they could continue collecting food trays and instructed him to ask a legal officer for those documents. (Gomez Decl. ¶¶ 3-4; Soto Decl. ¶¶ 3-4.) According to the officers, Plaintiff refused to release his hands from the port, stating that he was engaged in a "peaceful protest." (Gomez Decl. ¶ 4; Soto Decl. ¶ 4.) They then both worked together to clear the port and, once Plaintiff's hands and jumpsuit were no longer in the way of the food port door, they secured it. (Gomez Decl. ¶ 4; Soto Decl. ¶ 4.)

Defendants support their story with medical records indicating that Plaintiff's hand was not injured during the event. (Doc. No. 42-1, Ex. I.) As they explain, a nurse who saw him later in the day observed that all the fingers in his left hand were "moving freely," and the swelling on one of his fingers was consistent with one of Plaintiff's previous injuries. (Id.) A few weeks prior to this incident, Plaintiff was diagnosed with a "Closed Bennett's fracture of [his] left thumb with delayed healing" from a fight with another

inmate. (Doc. No. 42-1, Ex. G.) After the food port incident, a medical practitioner instructed Plaintiff to take some ibuprofen and follow up if his case worsened. (Doc. No. 42-1, Ex. I.) X-rays of Plaintiff's hand taken a few days later ultimately "showed no new injuries or fractures." (Id.)

**The Cell Door Incident**

On December 17, 2018, escort officers transported Plaintiff from the medical clinic to his housing facility. (Cuevas Decl. ¶ 2; Hampton Decl. ¶ 2; Orsatt Decl. ¶ 2; Vaughn Decl. ¶ 15.) Cuevas and Orsatt met Plaintiff at the sally port, a hallway from which Plaintiff was to enter his housing unit. (See Vaughn Decl. ¶¶ 9-13.) According to Plaintiff, it was unusual for Cuevas and Orsatt to meet him there because the escort officers typically take inmates directly to their cells. (Id. ¶ 11.) The officers contend that they met Plaintiff in the sally port for valid penological reasons. (Cuevas Decl. ¶¶ 2-3; Hampton Decl. ¶¶ 4-5; Orsatt Decl. ¶¶ 2-3.) Cuevas alleges that he told Hampton, the sergeant, that Plaintiff had a history of capturing handcuffs. (Cuevas Decl. ¶¶ 2-3; Hampton Decl. ¶ 5.) As Hampton explains, based on this information, he decided to use a triangle retention device to limit Plaintiff's ability to retain his handcuffs during the transfer. (Hampton Decl. ¶ 5.) According to Hampton, he attended the transfer to oversee the use of the device. (Id.)

When Plaintiff arrived at the sally port, he laid face down on the ground. (Doc. No. 42-1, Ex. A at 3:25.) Plaintiff says he did this because Cuevas and Orsatt ordered him to do so. (Vaughn Decl. ¶ 10.) Cuevas and Orsatt claim that Plaintiff dropped to the floor on his own volition. (Cuevas Decl. ¶ 3; Orsatt Decl. ¶ 3.) While Plaintiff was lying on the ground, Hampton arrived at the sally port. (Doc. No. 42-1, Ex. A at 4:30 to 6:30.) Then, Cuevas affixed a triangle retention device to Plaintiff's handcuffs in the presence of Hampton and Orsatt. (Doc. No. 47-1, Pl's Statement of Disputed Facts ("SDF") at 15.) Officers Cuevas and Orsatt claim that Plaintiff began to shout obscenities at them during this time. (Cuevas Decl. ¶ 3; Orsatt Decl. ¶ 4.) Plaintiff denies these claims and instead alleges that the officers threatened him for being a "snitch," among other things, while he was on the ground and throughout his transfer. (Vaughn Decl. ¶¶ 9-15.)

Cuevas, Orsatt, and Hampton eventually escorted Plaintiff to his cell. (SDF at 16.) When they arrived at Plaintiff's cell, Hampton ordered his cellmate out. (Id. at 18.) Plaintiff fell to his knees at the threshold of the cell door. (Doc. No. 42-1, Ex. C at 7:40.) According to Cuevas and Orsatt, at this time, Plaintiff began shouting that he was "peacefully protesting." (Cuevas Decl. ¶ 5; Orsatt Decl. ¶ 6.) Cuevas then is seen on the surveillance video removing Plaintiff's leg restraints and, after the restraints were removed, Plaintiff stood up and entered the cell. (Doc. No. 42-1, Ex. C at 7:50 to 8:15.) The officers motioned to have the cell door closed, and Defendant Canlas, the officer stationed in the control room at the time, closed the door.[2] (See id. at 8:15.) When the door was closed, Cuevas and Orsatt contend that Plaintiff impeded Cuevas's efforts to remove Plaintiff's handcuffs and the triangle retention device. (Cuevas Decl. ¶ 6; Orsatt Decl. ¶ 6.) Plaintiff claims that he was on his knees at the time, shouting for help. (Vaughn Decl. ¶ 16.) Cuevas then signaled for the cell door to open. (Doc. No. 42-1, Ex. C at 9:20.) When the door opened, Plaintiff was on the ground. (See id. at 9:30; Vaughn Decl. ¶ 16.)

The surveillance video then shows Hampton escorting Plaintiff's cellmate away from the cell. (Doc. No. 42-1, Ex. C at 10:23 to 10:40.) In his declaration, Hampton stated that he did this to ensure the cellmate's safety. (Hampton Decl. ¶ 8.) Hampton also stated in a deposition that the cellmate asked him to be removed from the situation and moved to a different cell. (Doc. No. 47-2, Ex. 7, Hampton Dep. at 59-60.) Plaintiff's cellmate claims that he never made these requests. (Id., Ex. 2, McKinley Decl.)

After Hampton left with Plaintiff's cellmate, Plaintiff asserts that Cuevas signaled for the cell door to close while Plaintiff was still within the threshold of the door. (SDF at 29; Vaughn Decl. ¶¶ 16, 19.) The surveillance video depicts Cuevas making a hand gesture while Orsatt and him were near the cell door with Plaintiff. (Doc. No. 42-1, Ex. C at 10:40

---

[2] The officers in the housing unit cannot open and close the cell doors on their own. (SDF at 24.) They must signal an officer in the control room who opens the cell door by pressing a button. (Id.) Usually, this signal is given either verbally or by waiving one's hand in the direction of the door. (Id.) At this time, Canlas was in the control room and oversaw the opening and closing of cell doors. (Canlas Decl. ¶ 2.)

to 11:00.) Cuevas claims that he moved his hand to communicate to another officer on the cell block. (Cuevas Decl. ¶¶ 8, 12.) In any event, Canlas interpreted this motion as a signal to close the door and began to close it. (Canlas Decl. ¶ 5.) The surveillance video depicts the door closing a few inches. (Doc. No. 42-1, Ex. C at 10:40 to 11:20.) The video also shows Plaintiff moving from his knees to the ground. (Id.)

According to Plaintiff, the door struck him in the head and neck, injuring him. (Vaughn Decl. ¶¶ 18-19.) After the cell door purportedly closed on him, Plaintiff lay still on the ground, during which time Hampton returned. (Doc. No. 42-1, Ex. C at 11:00 to 12:00.) At this time, Cuevas, Hampton, and Orsatt claim that Plaintiff made a threat against Hampton's life. (Hampton Decl. ¶ 17; Cuevas Decl. ¶ 9; Orsatt Decl. ¶ 11.) According to them, he stated the following: "[I]n fifty-one days I will be getting out. I will find you and put my pistol in your face and unload it into your head!" (Hampton Decl. ¶ 17; Cuevas Decl. ¶ 9; Orsatt Decl. ¶ 11.) Hampton reported this threat later that day. (Hampton Decl. ¶¶ 17-18.) Plaintiff, on the other hand, denies making such a threat and claims that Hampton threatened to falsely report him. (Vaughn Decl. ¶ 21.) Additionally, an inmate claims to have overheard Hampton tell another correctional officer that he filed a false report against Plaintiff to protect himself. (Doc. No. 47-2, Ex. 5, Mejias Decl.) Hampton's report was not adjudicated by RJD. (Hampton Decl. ¶¶ 17-18.)

When Plaintiff was taken to receive medical attention later that day, the clinician who examined him concluded that his reports of neck pain and paralysis were "factitious" and "disproved by exam." (Doc. No. 42-1, Ex. L.) A doctor who saw him the following day confirmed that his neck x-rays were negative. (Id., Exs. I, K.) A clinician who observed him a few days later, on December 21, 2018, noted that Plaintiff could move all his extremities, including his neck, and concluded that Plaintiff had "no . . . significant deformity or injury." (Id., Ex. O.) Further, Plaintiff moved his head and neck in his interviews taken after cell door incident, (id., Exs. D, E, F), grappled with his brother when he left prison, (id., Ex. J at 100-02), and complained that his neck was also injured as a

result of other, unrelated incidents that occurred after December 17, 2018, (id., Exs. M, N, O, P).

Correctional officers interviewed Plaintiff about the cell door incident three times over the course of the next several days. (Id., Exs. D, E, F.) On December 17, 2018, the day of the incident, Plaintiff described the events as a "misunderstanding," stating that he and the parties involved "just had a bad day." (Id., Ex. D.) Plaintiff, however, explains that he only made these statements because Correctional Officer Moore, who conducted the interview, told him that he would make Hampton's threat allegations disappear if Plaintiff downplayed what happened. (Vaughn Decl. ¶ 22.) On December 18, 2018, the next day, Plaintiff recanted these statements and accused Hampton of shoving his head in front of the closing cell door and threatening him with a false report. (Doc. No. 42-1, Ex. E.) On a third interview, on December 21, 2018, Plaintiff reiterated the claims made in his second interview. (Id., Ex. F.) Plaintiff now admits that Hampton was not present when the door was closed on him, but Plaintiff was on the ground throughout most of the events. (SDF at 38-39.)

Plaintiff's second amended complaint alleges various claims against Defendants for the violation of his First and Eighth Amendment rights, 42 U.S.C. §§ 1985-86, and various California laws. (Doc. No. 22-1.) Defendants move for summary judgment on each of these claims. (Doc. No. 42.)

## Discussion

**I.   Standard of Review**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010). "A genuine issue of material fact exists when

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Fortune Dynamic, 618 F.3d at 1031 (internal quotation marks and citations omitted); accord Anderson, 477 U.S. at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case that the nonmoving party bears the burden of proving at trial. Id. at 322-23; Jones v. Williams, 791 F.3d 1023, 1030 (9th Cir. 2015).

Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting former Fed. R. Civ. P. 56(e)); accord Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007). To carry this burden, the non-moving party "may not rest upon mere allegation or denials of his pleadings." Anderson, 477 U.S. at 256; see also Behrens v. Pelletier, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings."). Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 256.

When ruling on a summary judgment motion, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). The court should not weigh the evidence or make credibility determinations. See Anderson, 477 U.S. at 255. Further, the Court may consider other materials in the record not cited to by the parties, but it is not required to do

so.³  Fed. R. Civ. P. 56(c)(3).

## II.     Plaintiff's Claims Under the Eighth Amendment

Plaintiff brings excessive force claims against Defendants, alleging that Defendants violated his rights under the Eighth Amendment. (Doc. No. 22-1 ¶¶ 50-88.) "The Eighth Amendment prohibits cruel and unusual punishment in penal institutions." Wood v. Beauclair, 692 F.3d 1041, 1045 (9th Cir. 2012). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Alters, 475 U.S. 312, 319 (1986) (omission in original) (internal quotation marks and citation omitted). "The 'core judicial inquiry' in excessive force cases is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Hoard v. Hartman, 904 F.3d 780, 788 (9th Cir. 2018) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).  If the evidence, "viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness," the case should be submitted to a jury. Whitley, 475 U.S. at 322.

### A.     The Food Port Incident

The parties dispute whether Gomez and Soto used excessive force in the food port. (SDF at 6.) According to Defendants, Plaintiff's hand was not slammed in the food port door. (Gomez Decl. ¶ 4; Soto Decl. ¶ 4.) In support, they point to several medical reports that indicate Plaintiff sustained no new injuries from the food port incident. (Doc. No. 42-1, Ex. I.) Specifically, a medical record that explains Plaintiff fractured his thumb a few weeks before the food port incident in a fight with another inmate. (Id., Ex. G.) Plaintiff submitted a conflicting declaration in which he claims that Gomez and Soto slammed his hand in the food port, causing him pain. (Vaughn Decl. ¶ 7.) At least one

---

³     The Court grants the parties various evidentiary objections where valid and denies them where invalid.

other inmate submitted a declaration claiming to have witnessed the officers smash Plaintiff's hand into the food port. (Doc. No. 47-2, Ex. 2, McKinley Decl.)

On the issue of intent, the parties also dispute whether Gomez and Soto were aware that Plaintiff had filed a lawsuit against Parker. (Gomez Decl. ¶ 6; Soto Decl. ¶ 6; Vaughn Decl. ¶¶ 3-7.) According to Gomez and Soto, they were unaware of Plaintiff's pending lawsuit. (Gomez Decl. ¶ 6; Soto Decl. ¶ 6.) Plaintiff submitted a declaration explaining that Gomez and Soto must have known about the lawsuit because he asked them to provide him copies of it shortly before the incident. (Vaughn Decl. ¶¶ 3-7.) Plaintiff claims he used Parker's name when making this request. (Id. ¶ 3.)

Based on parties' conflicting version of the events, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's Eighth Amendment claims against Gomez and Soto. See Harris v. Itzhaki, 183 F.3d 1043, 1051 (9th Cir. 1999) (explaining that issues of intent are generally best reserved for a jury); Riley v. Franke, No. 17-CV-891-JPS, 2018 WL 3717027, at *7 (E.D. Wis. Aug. 3, 2018) (citation omitted) (explaining that an officer's awareness and intent in shutting a food port door on an inmate is generally a question of material fact).

### B. The Cell Door Incident

Defendants argue that Canlas, Cuevas, Hampton, and Orsatt did not violate Plaintiff's Eighth Amendment rights during the cell door incident because they did not shut the cell door intentionally and, in any event, Plaintiff sustained no injuries. (Doc. No. 42 at 16-18.) Canlas, Cuevas, Hampton, and Orsatt each submitted declarations stating that they did not know about Plaintiff's lawsuit against Parker or his complaints against Gomez and Soto, and Plaintiff's contentions otherwise are merely speculative. (See Canlas Decl. ¶ 7; Cuevas Decl. ¶ 11; Hampton Decl. ¶ 21; Orsatt Decl. ¶ 13). Additionally, Defendants assert that Cuevas's hand motion was actually directed at another officer in the housing unit. (Cuevas Decl. ¶ 8; Orsatt Decl. ¶¶ 7-9.) As such, Cuevas claims that he did not intend for Canlas to shut the cell door when he made this motion. (Cuevas Decl. ¶ 8; Orsatt Decl. ¶¶ 7-9.)

Plaintiff submits conflicting evidence regarding Cuevas, Hampton, and Orsatt. Hampton was Parker's supervisor at the time the Parker incident occurred in 2017 and was deposed as a witness in the Parker case. Hampton Dep., Vaughn v. Parker, No. 18-cv-2098-JAH-MDD (S.D. Cal. Sept. 3, 2019), Doc. No. 44-4, Ex. 15. Hampton was not formally notified of the Parker lawsuit until after the events in question. (Hampton Decl. ¶ 21.) But Plaintiff submitted a declaration from an inmate who claims that, in 2017, he overheard Hampton telling Parker to not worry about an internal complaint filed by Plaintiff against Parker because Hampton would set Plaintiff up if Plaintiff caused any further problems. (Doc. No. 47-2, Hale Decl.) Additionally, Cuevas, in his deposition, mentioned that he overheard Plaintiff shouting about his lawsuit against Parker "a bunch of times" prior to the cell door incident. (Doc. No. 47-2, Ex. 3, Cuevas Dep. at 37-38.) Further, Plaintiff alleges that Cuevas, Hampton, and Orsatt called him a "snitch" while they were transporting him to his cell. (Vaughn Decl. ¶ 15.) Plaintiff also questions their intentions in using a triangle device on him because Defendants have not produced any administrative record from which the officers could have known of Plaintiff's history of capturing handcuffs. (SDF at 14-15.) Cuevas maintains that he was informally made aware of this history during a shift change. (Cuevas Dep. at 54-56.) In light of the conflicting evidence, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's Eighth Amendment claims against Cuevas, Hampton, and Orsatt.

As to Canlas, the control room officer, Plaintiff fails to raise a triable issue of material fact. Canlas's only involvement was in the control room and he was unaware that Plaintiff was within the threshold of the door when he closed it. (Canlas Decl. ¶¶ 5-10.) Additionally, Cuevas's hand signal, depicted on the surveillance video, made it reasonable for Canlas to close the door. Thus, Canlas is entitled to summary judgment with respect to Plaintiff's excessive force claim against him. See Farmer v. Brennan, 511 U.S. 825, 826, 837-40 (1994) (explaining that "prison officials may not be held liable [under the Eighth Amendment] if they prove that they were unaware of even an obvious risk" to the prisoner's safety).

### III. Plaintiff's Claims Under the First Amendment

The Court then turns to Plaintiff's First Amendment retaliation claims against Defendants. "Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citation omitted). An action against prison officials for First Amendment retaliation must satisfy five elements: "(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). The plaintiff must establish a link between the exercise of his constitutional rights and the allegedly retaliatory action. Pratt v. Rowland, 65 F.3d 802, 806-07 (9th Cir. 1995).

Construing the record in the light most favorable to Plaintiff, genuine issues of material fact remain as to each of the disputed elements of his retaliation claims against Gomez, Soto, Cuevas, Hampton, and Orsatt. With respect to Soto and Gomez (the food port incident), the parties dispute whether the incident had anything to do with the Parker lawsuit. Likewise, with respect to Cuevas, Hampton, and Orsatt (the cell door incident), Plaintiff asserts these officers acted in retaliation for the Parker lawsuit and the complaints Plaintiff made against Soto and Gomez. (SDF at 41-44.) Cuevas, Hampton, and Orsatt maintain they acted for valid penological reasons, (Cuevas Decl. ¶¶ 2-3; Hampton Decl. ¶¶ 4-5; Orsatt Decl. ¶¶ 2-3), and reiterate their claims that they were unaware of the Parker lawsuit and the complaints against Gomez and Soto, (Doc. No. 42 at 19). These disputes are best reserved for a trier of fact.

Further, Hampton filed a statement indicating that Plaintiff threatened his life while Plaintiff was on the ground after the cell door incident. (Hampton Decl. ¶¶ 17-18.) A correctional officer should report a threat made by an inmate. But Plaintiff denies ever making this threat and alleges that Hampton admitted to him that he would file a false report against him. (Vaughn Decl. ¶¶ 20-21.) Plaintiff also submitted a declaration from

a fellow inmate who claims that he heard Hampton tell another officer that Hampton filed a threat allegation against Plaintiff to cover himself from liability. (Doc. No. 47-2, Ex. 5, Mejias Decl.) Based on these issues of material fact, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's retaliation claims against Gomez, Soto, Cuevas, Hampton, and Orsatt.

As to Canlas, the control room officer, Plaintiff fails to raise a triable issue of material fact. Canlas closed Plaintiff's cell door because he interpreted Cuevas's hand motion as a signal to close the door, and the surveillance video depicts Cuevas making this hand motion. (Canlas Decl. ¶ 5; Doc. No. 47-2, Ex. C at 10:40 to 11:20.) Also, the surveillance video shows that the cell door only closed a few inches, and the door immediately began to open after Plaintiff is seen moving toward the ground. (Doc. No. 47-2, Ex. C at 11:00 to 11:20.) Thus, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's retaliation claim against Canlas.

### IV. Plaintiff's Claims Under 42 U.S.C. §§ 1985-86

Plaintiff argues that Defendants violated his rights under 42 U.S.C. §§ 1985-86 because they denied him equal protection of the law. (Doc. No. 47 at 11.) In so doing, Plaintiff only invokes the second clause of § 1985(2). (Id. at 11-12.) Yet, "[i]t is well-settled that the equal protection language of the second clause of section 1985(2) [requires] an allegation of class-based animus." Portman v. Cty. of Santa Clara, 995 F.2d 898, 909 (9th Cir. 1993) (second alteration in original) (citations and internal quotation marks omitted); see also Bagley v. CMC Real Estate Corp., 923 F.2d 758, 763 (9th Cir. 1991). Here, Plaintiff does not argue that he was deprived of any rights as the result of his membership in a protected class. Thus, the Court grants Defendants' motion for summary judgment as to Plaintiff's claims under §§ 1985-86.

### V. Plaintiff's Negligence Claims

The Court then turns to Plaintiff's negligence claims against Defendants. "In order to establish liability on a negligence theory, a plaintiff must prove duty, breach, causation, and damages." Conroy v. Regents of the Univ. of Cal., 45 Cal.4th 1244, 1250 (2009).

Because prisoners are vulnerable and dependent, California recognizes that prison guards owe prisoners a duty to reasonably protect them from foreseeable harms. Giraldo v. California Dep't of Corr. & Rehab., 168 Cal. App. 4th 231, 246-51 (2008); see also Lawson v. Superior Ct., 180 Cal. App. 4th 1372, 1389-90 (2010). California law also allows for the recovery of subjective, non-economic damages such as "pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, [and] injury to reputation and humiliation." Cal. Civ. Code § 1431.2; see also Niles v. City of San Rafael, 42 Cal. App. 3d 230, 244 (1974).

Here, Plaintiff contends that each defendant in this action breached a duty to use reasonable care to protect Plaintiff. (Doc. No. 37 at 12.) Defendants conversely submit that they acted reasonably and professionally. (Canlas Decl. ¶ 10; Cuevas Decl. ¶¶ 13-14; Gomez Decl. ¶¶ 9-10; Hampton Decl. ¶¶ 23-24; Orsatt Decl. ¶¶ 15-16; Soto Decl. ¶¶ 9-10.) "[S]ummary judgment is generally an inappropriate way to decide questions of reasonableness because the jury's unique competence in applying the reasonable man standard," Eid v. Alaska Airlines, Inc., 621 F.3d 858, 868 (9th Cir. 2010), particularly where triable issues of fact exist as to Plaintiff's excessive force and retaliation claims predicated on the officers' same conduct. Thus, Plaintiff raises triable issues of fact as to whether Gomez, Soto, Cuevas, Hampton, and Orsatt violated a duty of care owed to Plaintiff. On the other hand, summary judgment is appropriate for Plaintiff's negligence claim against Canlas. Canlas's only role was in the control room, removed from the incident, and his only action was in response to the hand motion made by Cuevas, which is shown on the surveillance video. (Canlas Decl. ¶¶ 5-10; see also Doc. No. 47-2, Ex. C at 10:40 to 11:20.) Plaintiff fails to otherwise demonstrate that Canlas acted unreasonably. Therefore, the Court grants Defendants' motion for summary judgment as to Plaintiff's negligence claims against Canlas.

As to damages, Defendants have proffered considerable evidence questioning the extent, if any, of Plaintiff's injuries. For example, Defendants submitted medical reports proving that Plaintiff's hand was injured prior to the food port incident and that Plaintiff

had no discernable new injuries after the incident. (Doc. No 42-1, Exs. G, H, I, K.) Nevertheless, Plaintiff states in a declaration that the food port incident caused him extreme pain. (Vaughn Decl. ¶ 7.) As a result, Plaintiff raises genuine issues of material fact with respect to whether Gomez and Soto's actions caused him any damages. Thus, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's negligence claims made against Gomez and Soto.

Turning to the cell door incident, Defendants also offer medical reports indicating that Plaintiff had no significant neck injury from the cell door. (Doc. No. 42-1, Ex. L.) One clinician he saw that day even stated that Plaintiff's injuries were "factitious." (Id.) Additionally, Defendants point out that Plaintiff appeared to be able to freely move his neck and engage in regular activity shortly after the event. (Doc. No. 42 at 17-18.) Finally, Defendants explain that Plaintiff also claims to have injured his neck on at least two other occasions while in custody, each occurring after the cell door incident. (Id., Exs. M, P.) Plaintiff's declaration states that the cell door caused him pain when it struck him. (Vaughn Decl. ¶ 18.) Faced with conflicting evidence, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's negligence claims against Cuevas, Hampton, and Orsatt.

## VI. Plaintiff's Battery Claims

The Court next turns to Plaintiff's battery claims against Defendants. In California, the elements of battery are met if: "(1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." Brown v. Ransweiler, 171 Cal. App. 4th 516, 526-27 (2009).

In his opposition, Plaintiff raises genuine disputes of material fact regarding his battery claims against Gomez, and Soto, and Cuevas. Plaintiff raises triable issues as to whether Gomez and Soto intentionally slammed his hand with the food port of his cell door and whether Cuevas intentionally motioned for the control room officer to close a cell door on Plaintiff. In opposition, Defendants claim that Soto and Gomez did not slam Plaintiff's

15

19-cv-01687-H-KSC

hand in the food port, (Gomez Decl. ¶ 4; Soto Decl. ¶ 4), and that Cuevas did not intend for the cell door to close, (Cuevas Decl. ¶ 8; Orsatt Decl. ¶¶ 7-9). In ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party. Scott, 550 U.S. at 378. As a result, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's battery claims against Cuevas, Gomez, and Soto. Plaintiff fails to raise a triable issue of fact as to any of the remaining Defendants on his battery claims. (See Doc. No. 47 at 13.) Thus, the Court grants Defendants' motion for summary judgment for Plaintiff's battery claims against Canlas, Hampton, and Orsatt.

## VII. Plaintiff's Claims Under California Civil Code section 52.1

Finally, the Court turns to Plaintiff's claims against Cuevas, Hampton, and Orsatt under California Civil Code section 52.1. Section 52.1 provides a cause of action that protects against interferences with one's legal rights "by threats, intimidation or coercion." Cornell v. City & Cty. of San Francisco, 17 Cal. App. 5th 766, 791 (2017), as modified (Nov. 17, 2017); see also Reese v. Cty. of Sacramento, 888 F.3d 1030, 1040 (9th Cir. 2018).

Defendants argue that summary judgment is proper for these claims because none of them used threats in the first place. (Doc. No. 42 at 22.) Plaintiff claims that Cuevas, Hampton, and Orsatt threatened him while he was being transferred to his cell. (Vaughn Decl. ¶ 15.) Plaintiff also alleges that Hampton specifically threatened to file a false report against him after the cell door incident, (Vaughn Decl. ¶ 21), and submitted a declaration from an inmate who claims to have overheard Hampton discussing his plan to falsely accuse Plaintiff, (Doc. No. 47-2, Ex. 5, Mejias Decl.). Considering the conflicting evidence, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's section 52.1 claims.

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion for summary judgment. Specifically, the Court: (1) grants Gomez, Soto, and Cuevas's motion for summary judgment with respect to Plaintiff's 42 U.S.C. §§ 1985-86 claims against them, but otherwise denies their motion; (2) grants Hampton and Orsatt's

motion for summary judgment with respect to Plaintiff's §§ 1985-86 and battery claims against them, but otherwise denies their motion; and (3) grants Canlas's motion for summary judgment in its entirety.

**IT IS SO ORDERED.**

DATED: March 9, 2021

*/s/ Marilyn L. Huff*
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT